1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

SUSAN KAY SISCO,                           )   Case No.: 13-CV-01817-LHK
                                           )
12                  Plaintiff,             )
                                           )
13         v.                              )   ORDER DENYING PLAINTIFF'S
                                           )   MOTION FOR SUMMARY
14   CAROLYN W. COLVIN, Acting             )   JUDGMENT; GRANTING
     Commissioner, Social Security Administration, )   DEFENDANT'S CROSS-MOTION FOR
15                                         )   SUMMARY JUDGMENT
                                           )
16                  Defendant.             )
     _____)

17

18         Plaintiff Susan Kay Sisco ("Sisco") appeals a final decision of the Commissioner of Social

19   Security ("Commissioner") denying Sisco's application for a period of disability and disability

20   insurance benefits under Title II of the Social Security Act. Before the Court are Sisco's motion for

21   summary judgment or, in the alternative, for remand, ("Pl. MSJ") ECF No. 10, and the

22   Commissioner's cross-motion for summary judgment, ("Def. MSJ") ECF No. 13. Both motions are

23   fully briefed. *See* Pl. MSJ, Def. MSJ, ("Pl. Reply") ECF No. 14. Upon consideration of the

24   briefing, the record in this case, and for the reasons set forth below, the Court DENIES Sisco's

25   motion for summary judgment and GRANTS the Commissioner's cross-motion for summary

26   judgment.

27
28

United States District Court
For the Northern District of California

1

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.      **BACKGROUND**

      A.      **Plaintiff's Age and Educational, Vocational, and Medical History**

Sisco was born in 1952. Admin. R. ("AR") 94. Sisco completed a bachelor's degree in human development. AR 629. Sisco last worked on December 30, 2008 at which time she was a social service director at a senior housing facility. AR 193. Sisco had held the social service director job for approximately six years. *Id*. Sisco claims she was fired by her employer for repeated absences due to her medical conditions. AR 192. Prior to the social service director job, Sisco worked in a variety of functions, including as children's bookseller, government clerk, interpretative guide, job developer/counselor, medical social caseworker, tour guide, and travel consultant. AR 193.

Sisco was diagnosed with stage one breast cancer in 2003. AR 24. The cancer was successfully treated with surgery and radiation, and there have been no signs of recurrence. *Id*. Sisco was also diagnosed with multiple sclerosis ("MS") in 2003. AR 315. In addition, Sisco suffers from orthopedic problems in her neck, back, hips, and knees, depression, and anxiety. AR 22.

      B.      **Procedural History**

On July 22, 2009, Sisco applied for a period of disability and disability insurance benefits, alleging that she had become disabled on December 30, 2008, at the age of fifty-six. AR 22. Sisco alleged disability resulting from breast cancer; MS; orthopedic problems in her neck, back, hips, and knees; and depression and anxiety. *Id.* Sisco's application was denied initially and upon reconsideration. AR 96, 106. An Administrative Law Judge ("ALJ") conducted a hearing on March 29, 2011. AR 22, 51-93. On September 6, 2011, the ALJ issued a written decision concluding that Sisco was not disabled and therefore was not entitled to benefits. AR 22-44.

The ALJ first determined that Sisco had acquired sufficient quarters of coverage to remain insured through December 31, 2013. AR 22, 24. The ALJ then applied the five-step evaluation process for determining disability described in 20 C.F.R. § 404.1520(a). AR 23. At step one, the ALJ found that Sisco had not engaged in substantial gainful activity since December 30, 2008, the

2

alleged onset date. AR 24. At step two, the ALJ concluded that Sisco suffers from a severe combination of impairments consisting of MS, degenerative disc disease of the cervical spine, trochanteric bursitis of the right hip, and bilateral chrondromalacia of the patella. *Id*. The ALJ determined that Sisco's breast cancer was not a severe impairment as it had been successfully treated and showed no signs of recurring. *Id*. The ALJ also determined that Sisco's depression and anxiety were not a severe impairment. AR 25. At step three, the ALJ found that Sisco's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

At step four, the ALJ found that although Sisco was significantly restricted by MS, Sisco retained the residual functional capacity ("RFC") to perform a narrowed range of sedentary work, including her previous jobs of social worker and travel consultant. AR 26, 37. The ALJ found that Sisco's mental condition was "generally mild in nature" and imposed "no significant functional restrictions." AR 41. At the hearing, the ALJ asked the vocational expert if a person with Sisco's physical limitations could perform her prior work. AR 87-90. The vocational expert testified that such a person would be able to work as a social worker or travel consultant. AR 89. As a result of the ALJ's RFC determination, the ALJ did not progress to step five. AR 44.

The Appeals Council denied Sisco's request for review on February 22, 2013, making the ALJ's decision the final decision of the Commissioner. AR 2-8. Sisco timely filed a complaint seeking judicial review of the Commissioner's decision in this Court on April 22, 2013. ECF 1.

## II.   LEGAL STANDARD

### A.   Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as

1    adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966

2    F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support

3    the Commissioner's decision, the court examines the administrative record as a whole, considering

4    adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d

5    498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation,

6    the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966

7    F.2d at 1258.

8    **B.      Standard for Determining Disability**

9          The Social Security Act defines disability as the "inability to engage in any substantial

10   gainful activity by reason of any medically determinable physical or mental impairment which can

11   be expected to result in death or which has lasted or can be expected to last for a continuous period

12   of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that

13   a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial

14   gainful work which exists in the national economy," given her age, education, and work

15   experience. 42 U.S.C. § 423(d)(2)(A).

16         "ALJs are to apply a five-step sequential review process in determining whether a claimant

17   qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

18   At step one, the ALJ determines whether the claimant is performing "substantial gainful activity."

19   20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to

20   step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment

21   or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled.

22   If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's

23   impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R.

24   Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is

25   disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the

26   claimant has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If

27   so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ

28

4

United States District Court
For the Northern District of California

1    determines whether the claimant can perform other jobs in the national economy. 20 C.F.R.

2    § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

3    "The burden of proof is on the claimant at steps one through four, but shifts to the

4    Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden

5    through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines

6    at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

## III.    DISCUSSION

8    Sisco challenges the ALJ's RFC determination regarding her mental condition. Pl. MSJ at

9    7-10. Sisco asserts that the ALJ: (1) ignored without explanation the opinion of Sisco's treating

10   psychiatrist, Dr. Xing-Xing Luo, regarding Sisco's mental limitations; (2) relied on Global

11   Assessment of Functioning ("GAF") scores instead of Dr. Luo's determination; and (3) failed to

12   include any mental limitations in evaluating Sisco's disability, including in the hypotheticals posed

13   to the vocational expert.[1] *Id.* The Court first considers the relevant medical evidence, and then turns

14   to each of Sisco's arguments.

### A.    Relevant Medical Evidence

16   "There are three types of medical opinions in social security cases: those from treating

17   physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc.*

18   *Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to

19   the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

20   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in

21   turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.*

22   Accordingly, when evaluating medical evidence, an ALJ must give a treating physician's

23   opinion "substantial weight." *Bray*, 554 F.3d at 1228. "When evidence in the record contradicts the

24   opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for

---

[1] In her opening brief, Sisco additionally argued that the ALJ failed to consider a November 23, 2011 assessment of her treating physician, Dr. Joanna Cooper. Pl. MSJ at 4. However, this assessment postdates the ALJ's hearing on September 6, 2011. Def. MSJ at 2. Dr. Cooper's assessment was therefore not before the ALJ and was presented only to the Appeals Council as part of Sisco's request for review. *Id.* Sisco withdrew this argument in her reply brief. Pl. Reply at 3. Accordingly, the Court will not address this argument further.

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

discounting the treating physician's opinion, supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830). "However, 'the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.'" *Id.* (quoting *Thomas*, 278 F.3d at 957).

The record evidence regarding Sisco's mental condition is summarized below:

### 1.   Xing-Xing Luo, M.D. (Treating Psychiatrist)

Sisco first saw Dr. Luo on January 11, 2010, when Dr. Luo performed Sisco's intake assessment at Pathways to Wellness, a psychiatric clinic. AR 624-34. Sisco's treating therapist, Karla Sagramoso, Ph.D., had previously encouraged her to visit a psychiatrist. AR 788. Based on Sisco's medical history and Dr. Luo's clinical impression, Dr. Luo diagnosed Sisco with anxiety and depression. AR 630. Dr. Luo prescribed an antidepressant and advised Sisco to continue seeing her therapist. AR 631-32.

Sisco subsequently saw Dr. Luo three more times, between September 2010 and February 2011. AR 701-06. At Sisco's first visit on September 20, 2010, Dr. Luo assessed Sisco to have "mild depression." AR 706. On Sisco's second visit on January 3, 2011, Dr. Luo assessed Sisco to have "depression." AR 704. On Sisco's third visit on February 7, 2010, Dr. Luo assessed Sisco to have "anxiety." AR 702. At all three visits, Dr. Luo assessed Sisco's GAF score at 65. AR 701, 703, 705. These correspond to "relatively normal" functioning. AR 35.

### 2.   Karla Sagramoso, Ph.D. (Treating Psychologist)

Sisco started attending regular individual therapy sessions with Dr. Sagramoso in January 2009, shortly after being fired from her job as a social service director. AR 767. Sisco was referred to Dr. Sagramoso by her treating physician, Denise Davis, M.D. *Id.* Dr. Sagramoso summarized her therapy sessions with Sisco in reports dated April 22, 2009, March 10, 2010, and March 16, 2011. AR 696, 766, 767-68. Dr. Sagramoso diagnosed Sisco with Dysthymic Disorder and Generalized Anxiety Disorder. *Id.*

In both the April 22, 2009 and March 10, 2010, summaries, Dr. Sagramoso explained that Sisco experienced "difficulty sleeping, symptoms of anxiety attacks including shortness of breath,

1    significant worry, tearful affect, difficulty concentrating, periodic feelings of hopelessness,

2    emotional disconnectedness from others, and low self esteem." AR 696; *see also* AR 766. Dr.

3    Sagramoso noted that these symptoms had "been present to some extent" since Sisco was

4    diagnosed with MS and breast cancer, but became "significantly worse" following her job loss. AR

5    696; *see also* AR 766. Dr. Sagramoso observed that Sisco "experienced some lessening of

6    symptoms" since starting psychotherapy, though Sisco still experienced "difficulty with

7    management of her emotions." AR 696; *see also* AR 766.

8            In the March 16, 2011 summary, prepared in advance of Sisco's application for

9    reconsideration following the initial denial of benefits, Dr. Sagramoso expanded on the effect that

10   Sisco's MS had on her functioning. AR 767. Dr. Sagramoso concluded that she had "serious

11   concerns" about Sisco's ability to maintain employment given Sisco's "physical symptoms'

12   significant impact on [Sisco's] ability to keep regularly scheduled activities, lowered vitality, and

13   their impingement on [Sisco's] concentration and mood." AR 768.

14                    **3.      Patricia Spivey, Psy.D. (Examining Psychologist)**

15           Sisco underwent a psychological disability evaluation by Dr. Spivey on October 30, 2009.

16   AR 551-54. Following the evaluation, Dr. Spivey concluded that Sisco did "not appear to have any

17   significant psychological issues." AR 554. In particular, Dr. Spivey found that Sisco had no mental

18   impairments relating to any work-related abilities. *Id.* Dr. Spivey observed that Sisco "responded

19   appropriately," "displayed full effort," and that Sisco's "mood was very good." AR 552.

20                   **4.      Mario Morando, M.D. (Examining Psychiatrist)**

21           Sisco underwent a mental RFC assessment by Dr. Morando on February 17, 2010. AR 657-

22   70. Dr. Morando concluded that Sisco had a severe mental impairment, but that this impairment

23   was not expected to last 12 months. AR 657. Dr. Morando found that Sisco suffered from

24   depressive disorder leading to several functional limitations. AR 660, 665. Dr. Morando also found

25   that Sisco was "not significantly limited" in any work-related function, and that "with continuous

26   treatment [Sisco was] expected to be non-severe by 1/2011." AR 668-70.

27           **B.       The ALJ's Treatment of Dr. Luo's Opinions**

28

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   Sisco claims that as part of the January 11, 2010 intake assessment at Pathways to

2   Wellness, Dr. Luo determined that Sisco had "moderate" mental limitations in all four of the

3   functional areas that the Social Security Administration ("SSA") uses to evaluate the severity of a

4   mental impairment.[2] Pl. MSJ at 7. Sisco contends that the ALJ should have considered Dr. Luo's

5   determination of "moderate limitations" in evaluating Sisco's disability.[3] *Id.* In the alternative, as

6   Dr. Luo was a treating physician, Sisco argues that the ALJ should have provided "specific and

7   legitimate reasons based on substantial evidence in the record" for rejecting or discounting Dr.

8   Luo's determination. *Id.* at 8 (citing *Lester*, 81 F.3d at 830-31). Sisco asserts that the ALJ instead

9   committed reversible error by disregarding Dr. Luo's opinion without discussion. *Id.* at 9.

10   The Court disagrees with Sisco's characterization of Dr. Luo's January 11, 2010

11   assessment. Dr. Luo's so-called "determination" that Sisco suffered from "moderate limitations" as

12   a result of her mental symptoms appears as part of a seven-page standardized intake assessment

13   form. AR 626-32. The fifth page of the intake form lists four "Functional Limitation[s]": (1)

14   "Restriction of activities of daily living"; (2) "Difficulties in maintaining social

15   functioning/relationships"; (3) "Difficulties in maintaining concentration, persistence of place"; and

16   and (4) "Episodes of decomposition and increase of symptoms, each of extended duration." AR

17   630. These categories broadly align with the four functional areas the SSA uses to assess the

18   severity of a claimant's mental impairment. *See supra* note 2. The intake form asks the individual

19

20   [2] The SSA evaluates the severity of a claimant's mental impairment based on the degree of
functional limitation that results from the impairment. 20 C.F.R. § 404.1520a(b)(2). A claimant's

21   limitations are evaluated in four functional areas: (1) activities of daily living; (2) social
functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R.

22   § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: "none," "mild,"
"moderate," "marked," and "extreme." 20 C.F.R. § 404.1520a(c)(4). The fourth functional area,

23   episodes of decompensation, is rated on a four-point scale ranging from "none" to "four or more."
*Id.*

24   [3] Under the Listings a mental disorder is considered "severe" only if the disorder results in
"marked" or greater limitations in at least two of the four functional areas. 20 C.F.R. pt. 404, subpt.

25   P, app. 1. The ALJ must find that the claimant suffers from a severe impairment in order to find
that the claimant is disabled at step three. 20 C.F.R. § 404.1520(a)(4)(iii). As Dr. Luo found that

26   Sisco had at most "moderate" limitations—which are less than "marked"—the Court does not
understand Sisco to challenge the ALJ's finding that Sisco was not disabled at step three. Rather,

27   the Court understands Sisco's contention to be that even "moderate" limitations impose some
functional burden, and that the ALJ should therefore have considered these limitations at steps four

28   and five.

8

completing the form to rate the degree of each of these limitations as: "None," "Mild," "Moderate," "Marked," "Extreme," or "Insufficient Evidence." AR 630. Again, these categories broadly align with the scale set out in the Social Security regulations. *See supra* note 2. Under the intake form's "Functional Limitation[s]" section is a space for "Supporting Comments." AR 630.

On Sisco's intake form, Dr. Luo checked the boxes for "Moderate" for all four functional limitations. *Id*. Dr. Luo did not provide any supporting comments. *Id*. There is no indication that Dr. Luo had Social Security standards in mind or that he intended to apply them when filling out this intake form. The intake form makes no mention of Social Security standards, and while the intake form's functional areas and severity scale broadly align with SSA's functional areas and severity scale, the standards are not identical. Without supporting comments or other evidence from the January 11, 2010 assessment, there is no basis for concluding that Dr. Luo, in checking "moderate" on this section of the intake form, meant to conclude that Sisco suffered from moderate limitations for purposes of a Social Security disability analysis.[4]

Consequently, the Court disagrees with Sisco's contention that these four "moderate" limitations checkmarks—which constitute a small and otherwise unsubstantiated part of a standardized form—amounted to a "determination" of "moderate mental limitations" for Social Security purposes. Rather, the checkmarks are better characterized as "'check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). ALJs are permitted to reject such check-off evidence. *Id.*; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that ALJ properly disregarded conclusory evidence in the form of a checklist that lacked supportive objective evidence and was contradicted in other parts of the record).

---

[4] Sisco argues that if a medical opinion is "vague," SSA rulings require the ALJ to follow up with the physician for clarification. Pl. Reply at 6. This is not an accurate characterization of the relevant SSA ruling. The ALJ's obligation to follow up with a treating physician applies only when the evidence does not support a treating physician's opinion *and* the ALJ cannot otherwise ascertain the basis for that opinion from the record. SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996). The ruling does not extend to "vague" opinions.

9

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Moreover, the ALJ clearly did consider and discuss Dr. Luo's medical opinions, including

2    opinions contained in the January 11, 2010 assessment. The ALJ quoted directly from the intake

3    form, finding it "persuasive" that Sisco reported "no difficulty with appetite, energy, or

4    concentration" at that time. AR 35. Overall, the ALJ noted that he accorded "significant probative

5    weight" to Dr. Luo's assessments. AR 42. While an ALJ must *consider* all medical evidence, the

6    ALJ is not required to *discuss* every piece of evidence. *See Howard ex rel. Wolff v. Barnhart*, 341

7    F.3d 1006, 1012 (9th Cir. 2003). In particular, the ALJ need not discuss evidence that is neither

8    significant nor probative. *Id.* Given the lack of context or elaboration, the four "moderate"

9    limitations checkmarks on the January 11, 2010 intake form were neither significant nor probative,

10   and thus the ALJ did not need to discuss the checkmarks specifically. The Court finds that the ALJ

11   properly evaluated Dr. Luo's assessment of January 11, 2010 and gave Dr. Luo's treatment records

12   the "substantial weight" the records were due.

13   Finally, the Court notes that even if the ALJ erred in not discussing Dr. Luo's checkmarks

14   specifically, such an error was harmless as it was "'inconsequential to the ultimate nondisability

15   determination' in the context of the record as a whole" *Molina*, 674 F.3d at 1122 (quoting

16   *Carmickle v. Comm'r of Soc. Security Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (internal

17   quotation marks omitted). The ALJ's finding that Sisco's psychiatric condition was "generally mild

18   in nature" and imposed "no significant functional restrictions," AR 41, is supported by substantial

19   evidence in the record beyond Dr. Luo's opinion, including Dr. Spivey's conclusions regarding the

20   relatively mild nature of Sisco's depression, AR 554, and Dr. Morando's assessment that Sisco's

21   psychiatric condition was not expected to last for a continuous 12-month period, AR 668-70. The

22   ALJ's finding is similarly consistent with the lack of references to Sisco's depression or anxiety in

23   the treatment records of her primary physician, Dr. Davis, or her treating neurologist, Joanna

24   Cooper, M.D. AR 41.

25   The ALJ recognized that Dr. Sagramoso's opinion of March 16, 2011, raised "serious

26   concerns" regarding any employment. AR 42. However, the ALJ gave specific and legitimate

27   reasons for discounting Dr. Sagramoso's March 16, 2011, opinion. AR 42-43. The ALJ noted Dr.

28

10

**United States District Court**
For the Northern District of California

1    Sagramoso's opinion concerned mainly the physical effects of Sisco's MS, a subject in which Dr.

2    Sagramoso is not an expert, rather than the effects of Sisco's depression or anxiety. AR 42. The

3    ALJ further noted that the opinion was unsupported by Dr. Sagramoso's own treatment notes,

4    which contain relatively few references to anxiety or depression. *Id.* The notes also indicate that

5    Sisco's concerns regarding her ability to work stemmed mostly from her physical condition rather

6    than from depression. AR 780-96. The ALJ therefore found that Dr. Sagramoso's opinion was

7    conclusory, unsupported, and as a result "entitled to minimal probative weight." AR 43.

8           Sisco does not challenge the ALJ's evaluation or use of these other medical opinions.

9    Therefore, the ALJ's ultimate decision regarding Sisco's mental limitations is supported by

10   substantial evidence even if the "moderate" limitations checkmarks are considered. Accordingly,

11   any error the ALJ may have committed in failing to specifically address Dr. Luo's checkmarks was

12   harmless. *See Carmickle*, 533 F.3d at 1163.

13          **C.      The ALJ's Use of Dr. Luo's GAF Scores**

14          Sisco further argues that the ALJ improperly relied on Dr. Luo's GAF scores while not

15   considering Dr. Luo's "moderate limitations" determination. Pl. MSJ at 9. Sisco argues that

16   because GAF scores do not directly correlate to the severity determinations used by the SSA, the

17   ALJ should instead have given Dr. Luo's more specific determination of "moderate" limitations

18   more weight. *Id.*

19          As discussed above, the Court finds that Dr. Luo's checkmarks did not constitute a

20   "determination" of moderate limitations. In any event, while Sisco is correct in that GAF scores are

21   not on their own determinative, *see McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008)

22   ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the

23   severity requirements in [the Social Security Administration's] mental disorders listings.'"

24   (alteration in original) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000))); *see also Vance v.*

25   *Astrue*, No. 07-4418, 2008 WL 2955140, at *5 (C.D. Cal. July 30, 2008) ("GAF scores are not

26   dispositive in social security cases."), the record shows that the ALJ did not exclusively or even

27   primarily rely on Dr. Luo's GAF scores. *See* AR 41-43. The GAF scores were just one of the

28

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

pieces of evidence the ALJ considered in determining that Sisco did not suffer from any mental limitations. The other evidence, as discussed above, included the opinions of three other physicians, Drs. Spivey, Morando, and Sagramoso, and the treatment records of two others, Drs. Davis and Cooper. *Id.* The Court therefore concludes that the ALJ gave the appropriate consideration to Dr. Luo's GAF scores.

### D.    The ALJ's Consideration of Mental Limitations

Finally, Sisco argues that the ALJ erred in not including any mental limitations in evaluating Sisco's disability, in particular in the hypotheticals posed to the vocational expert. Pl. MSJ at 9. Sisco argues, based primarily on *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), that even if Dr. Luo's opinion supported only a finding of mild mental impairment, all such non-severe limitations must be included in the hypotheticals posed to vocational experts. Pl. MSJ at 10.

In *Hutton*, the ALJ determined at step two of the disability analysis that the claimant's PTSD caused mild limitations in one of the functional areas. 491 F. App'x at 850. At step four, however, the ALJ excluded the claimant's PTSD from consideration altogether. *Id.* at 851. The Ninth Circuit held that this constituted reversible error: though the ALJ was free to discount the claimant's testimony, the ALJ could not ignore the ALJ's own previous findings. *Id.* at 850-51.

*Hutton* is inapposite to the present case. The ALJ here did not disregard any prior findings regarding Sisco's mental limitations. Rather, the ALJ specifically addressed Sisco's mental condition at step four of his disability analysis, by evaluating all of the evidence regarding Sisco's mental condition, including the treatment records of Drs. Luo, Davis, and Cooper, and the opinions of Drs. Spivey, Morando, and Sagramoso. AR 41-43. Upon consideration of this evidence, the ALJ concluded that Sisco's mental impairment was "generally mild in nature" and "impose[d] *no* significant functional limitations." AR 41 (emphasis added).

Therefore, contrary to Sisco's assertion, the Court finds that the ALJ did consider Sisco's mental condition in evaluating Sisco's disability. As the ALJ determined that Sisco's mental impairment imposed "no significant functional limitations," the ALJ was not required to include a mental limitation in the hypotheticals posed to the vocational expert. *See Magallanes v. Bowen*,

12

United States District Court
For the Northern District of California

1   881 F.2d 747, 756-57 (9th Cir. 1989) (holding that an ALJ may limit hypotheticals to restrictions

2   supported by substantial evidence on the record). Accordingly, the Court concludes that the ALJ

3   did not act improperly in failing to include mental limitations in the hypotheticals posed to the

4   vocational expert.[5]

5   **IV.    ORDER**

6          For the foregoing reasons, IT IS ORDERED THAT:

7          1.    Plaintiff's motion for summary judgment is DENIED;

8          2.    Defendant's cross-motion for summary judgment is GRANTED; and

9          3.    The Clerk shall close the file.

11  Dated: June 20, 2014                        *Lucy H. Koh*
                                                _____
12                                              LUCY H. KOH
                                                United States District Judge

---

[5] In her Reply, Sisco objects to the Commissioner's argument that the ALJ need not have accorded special weight to Dr. Luo's medical opinions because Dr. Luo was not yet a "treating physician" at the time of his initial January 11, 2010 assessment. *See* Reply at 4-5; Opp'n at 8-9. Sisco argues that even if Dr. Luo was not a treating physician, his opinion was still entitled to some weight and could not be disregarded without explanation. Reply at 4-5. Sisco further points out that the ALJ did accord weight to the opinions of other doctors who only examined Sisco on one occasion. *Id.* Sisco also objects to the Commissioner's suggestion that the ALJ was entitled to disregard Dr. Luo's January 11, 2010 assessment because Dr. Luo apparently had not reviewed Sisco's medical records or performed any tests at the time of the assessment. *See id.* at 5-6; Opp'n at 9.
    The Court finds that it need not resolve these objections. The arguments to which Sisco objects appear only in the Commissioner's cross-motion for summary judgment; they do not form any part of the basis for the ALJ's decision. To the contrary, and as discussed above, *see supra* Part III.B, the ALJ accorded "significant probative weight" to Dr. Luo's opinions, including the January 11, 2010 assessment. AR 35, 42. As the ALJ's decision does not depend on either the distinction between treating and non-treating physicians or the weight to be accorded to the medical opinions of doctors who have not reviewed the claimant's medical records or performed tests on the claimant, further discussion of these arguments is unnecessary.

13

Case No.: 13-CV-01817-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT